UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PATRICK DONOHUE, as Parent and Natural Guardian
of S.J.D., and PATRICK DONOHUE,
individually,

                                   Plaintiffs,

              -against-

                                                              **VERIFIED COMPLAINT**

MICHAEL KENNEDY LLOYD,
CITY OF NEW YORK,                                             Case No. 18-CV-9712
NEW YORK CITY DEPARTMENT OF EDUCATION,
STATE OF NEW YORK,
NEW YORK STATE BOARD OF REGENTS, and
NEW YORK STATE EDUCATION DEPARTMENT,

                                   Defendants.
------------------------------------------------------------------------x

        Patrick Donohue, as Parent and Natural Guardian of S.J.D., and Patrick Donohue,

individually, by their Counsel Brain Injury Rights Group, as and for their Verified Complaint,

duly allege as follows:

JURISDICTION AND VENUE

1.      This Court has jurisdiction of this action by reason of the existence of federal questions,

pursuant to 28 U.S.C. Sec. 1331.

2.      This Court has jurisdiction to hear this matter by reason of federal questions raised under

Title II of the Americans with Disabilities Act (42 U.S.C. 12131 et seq.).

3.      This Court has jurisdiction to hear this matter by reason of federal questions raised under

Section 504 of the Rehabilitation Act (29 U.S.C. Sec. 794).

4.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. Sec. 1367, to hear causes

of action arising under New York State law.

5.      Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. Sec. 1391(b), in that defendant City of New York has its principal office in Manhattan, New York County.

PARTIES

6.      Plaintiff Patrick Donohue is the father and natural guardian of S.J.D.

7.      Plaintiff S.J.D. is a minor. She is Patrick Donohue's 13-year-old daughter.

8.      The City of New York is a municipal corporation organized under the laws of the State of New York.

9.      The State of New York is vicariously liable for IHO Lloyd's actions, as they were committed within the scope of his employment as an IHO engaged by the New York State Education Department.

10.     The New York City Department of Education ("DOE") is an agency of the City of New York.

11.     The New York State Department of Education operates under the direction of the New York State Board of Regents.

12.     Defendant Michael Kennedy Lloyd is an independent contractor who has been engaged by the New York State Department of Education as an Impartial Hearing Officer ("IHO") to hear special education cases involving students in New York City schools (he is hereinafter referred to as "IHO Lloyd"). IHO Lloyd's office is located at 775 Riverside Drive, New York, New York.

13.     IHO Lloyd is partly under the direction of the City of New York and partly under the direction of the New York State Board of Regents.

14.     Upon information and belief, the City of New York and New York State Department of Education New York both receive federal funds and are therefore subject to Section 504 of the Rehabilitation Act.

15.     The New York State Education Department has the power to appoint and remove hearing officers.

16.      Although the City of New York does not have the power to remove hearing officers, it has the power to bring charges against hearing officers to the New York State Department of Education.

17.     The City of New York operates what is known as the Impartial Hearing Office.

18.     The Impartial Hearing Office controls hearing officers to the extent that it directs them as to where and when they can hold special education hearings, and that it selects hearing officers for hearings by means of a rotating list of hearing officers who were appointed by the New York State Department of Education.

FACTUAL ALLEGATIONS

19.     S.J.D. was a victim of child abuse when she was five days old, when her baby nurse violently shook her breaking four ribs, both collarbones and causing a severe brain injury (referred to as "Shaken Baby Syndrome" or "Abusive Head Trauma").

20.     S.J.D.'s story was covered by the news media extensively throughout the country and around the world. Her story was on the front pages of the New York Daily News and New York Post, and covered by The New York Times, CBS, NBC, FOX, ABC, CNN, NY1, PIX as well as Good Morning America and The TODAY Show (where S.J.D. has appeared two times).

21.     After S.J.D.'s child abuse, Patrick Donohue became an advocate for other youth who suffered from brain injuries, whether it was due to child abuse or some other traumatic (i.e., motor vehicle crash, sports concussion) or non-traumatic (i.e., brain tumor, epilepsy, stroke) causes of the acquired brain injury.

22.    In October 2007, Patrick Donohue launched The Sarah Jane Brain Foundation, which became one of the leading non-profits advocating for the prevention, identification, treatment and eventual cure of the number one cause of death and disability for American youth, brain injury. Patrick Donohue served as Chairman of the Board and CEO of The Sarah Jane Brain Foundation from its start until January 2018.

23.    In September 2013, Patrick Donohue and The Sarah Jane Brain Foundation, founded the first school, the International Academy of Hope ("iHOPE"), in New York City focused on students like S.J.D., with brain injuries or brain-based disorders who are non-verbal and non-ambulatory. Patrick Donohue served as Chairman of the Board of iHOPE from its start until January 2018.

24.    As an attorney, licensed to practice in New York State, Patrick Donohue represented most of the families who attended iHOPE, on a pro-bono basis to the families, with their claims against the New York City Department of Education. Since 2010, when S.J.D. became a school-age student, Patrick Donohue has represented S.J.D. and dozens of other children and their families with their claims against the DOE. During the 2017-2018 school year alone, Patrick Donohue appeared at over 75 pendency and due process hearings against the DOE.

25.    S.J.D. attended iHOPE from September 2013 to June 2018.

26.    In February 2018, Patrick Donohue founded the Brain Injury Rights Group, a non-profit civil rights legal advocacy organization representing the brain injury community. Patrick Donohue serves as Chairman of the Board of Brain Injury Rights Group.

27.    In July 2018, Patrick Donohue launched the International Institute for the Brain ("iBRAIN") with the same goal as iHOPE to provide special education and related services to students like S.J.D., who have a brain injury or brain-based disorder and are non-verbal and non-ambulatory. Patrick Donohue serves as Chairman of the Board of iBRAIN. iBRAIN began

providing special education and related services on July 9, 2018, with more than 35 students and more than 75 staff.

28.     Patrick Donohue moved S.J.D. from iHOPE to iBRAIN in July 2018, where she currently attends and receives special education in a 6:1:1 class along with the following related services: physical therapy, occupational therapy, speech-language therapy, vision education, assistive technology, 1:1 paraprofessional, and 1:1 nursing.

29.     S.J.D., who is now 13 years old, due to her brain injury is non-verbal, non-ambulatory and has highly intensive management needs requiring a high degree of individualized attention and intervention. She continues to be dependent upon adults for all of her daily living requirements from nutrition to toileting to mobility.

30.     Because Patrick Donohue has related the tragic story of S.J.D. many times, both in the media and in papers filed with defendants, the DOE and IHO Lloyd were well aware S.J.D. was victimized by the worst possible form of child abuse, and that her father would be seriously harmed, personally and professionally, if he were to be falsely accused of child abuse.

31.     The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. Sec. 1400 et seq., requires schools to provide for special education and related services for children with disabilities. The related services vary with each child, but in S.J.D.'s case have included physical therapy, occupational therapy, vision education, speech-language therapy, assistive technology services, 1:1 paraprofessional, 1:1 nursing and special transportation accommodations so that she can get to and from school.

32.     S.J.D. has the disability classification of "Traumatic Brain Injury," otherwise known as "TBI," within the meaning of 20 U.S.C. 1401.

33.     Under IDEA, school districts that seek federal funds must provide a Free and Appropriate Education ("FAPE") for all students with disabilities.

34.     Under IDEA, school district must design an Individualized Educational Program ("IEP") for the unique needs of each child, including S.J.D., to enable them to receive a meaningful benefit from education.

35.     Under IDEA, parents who are dissatisfied with the DOE's proposed IEP are entitled to bring a due process proceeding, in order to obtain an order from an IHO that would provide the student with a placement that would furnish him/her with a FAPE.

36.     Plaintiff Patrick Donohue was dissatisfied with the DOE's proposed IEP for the 2017-2018 school year and commenced a due process proceeding.

37.     The 2017-2018 due process proceeding resulted in a Finding of Fact Decision by an IHO placing S.J.D. at iHOPE and requiring the New York City Department of Education to fully fund her special education services, including related services.

38.     On June 14, 2018, the New York City Department of Education Committee on Special Education ("CSE") for District No. 10, which was responsible for formulating IEPs for students in that district, formulated an IEP for S.J.D. which totally failed to provide proper special education services and related services.

39.     On July 9, 2018, plaintiff Patrick Donohue commenced a due process proceeding, covering the 2018-2019 school year, against the DOE.

40.     In that due process proceeding, plaintiff Patrick Donohue seeks an order directing the DOE to fund a placement for S.J.D. at iBRAIN for the 2018-2019 school year.

41.     Plaintiffs invoked their right under state and federal law to an Open Hearing on the due process proceeding.

42.     Upon receipt of the due process complaint, the Impartial Hearing Office of the New York City Department of Education went to its rotating list of hearing officers and selected IHO Lloyd to hear the case.

43.     Plaintiff Patrick Donohue applied for a "pendency order," which would have directed the DOE to fund the placement of S.J.D. at iBRAIN, pending the outcome of the due process proceedings. After a pendency hearing occurred, IHO Lloyd denied the pendency motion.

44.     Specifically, plaintiffs asked the DOE to provide a hearing room which would be large enough to accommodate not only S.J.D. and her father but also all parents and students at iBRAIN (about 37 students) who wished to attend. In addition, plaintiffs reaffirmed the impartial hearing would be open to the public, as the federal and state definition of Open Hearing is defined, including any and all media from attending and covering the process, which is consistent with S.J.D.'s legacy of raising awareness about brain injury. The plaintiffs estimated over 100 people would be attending, including others in wheelchairs.

45.     There were two pre-hearing conference calls with IHO Lloyd, Plaintiffs' counsel, Moshe Indig from Brain Injury Rights Group ("Mr. Indig"), and attorneys from the DOE; one was on the record and one off the record. During both calls Mr. Indig stressed the importance of the Plaintiff's rights and requested for an Open Hearing.

46.     IHO Lloyd stated on the first pre-hearing call on October 9, 2018, on the record, he would identify a room to accommodate the anticipated attendees and/or provide an overflow room. However, he stated he would not allow audio or video media from attending due to federal and state courts not permitting such. Mr. Indig objected to that ruling and requested the opportunity to revisit this decision.

47.     IHO and the DOE attorney called Mr. Indig the following day, October 10, 2018, without any advance notice to discuss the assigned room for the upcoming Impartial Hearing scheduled for October 16, 2018. IHO Lloyd stated on the call that the New York City Department of Education Impartial Hearing Office had selected Room 507 at 131 Livingston Street, Brooklyn, New York for the impartial hearing and indicated the room could hold 25-50 people. Mr. Indig requested the call be on the record and IHO Lloyd denied the request. Mr. Indig began making the case for allowing audio and video media to attend, however, IHO Lloyd told Mr. Indig he could raise those arguments at the start of the hearing on October 16, 2018. Mr. Indig also discussed the previous request for IHO Lloyd to recuse himself and after a discussion about the proper format for such a request, IHO Lloyd denied the request. Mr. Indig memorialized the call with an email to IHO Lloyd and the DOE attorneys.

48.     There are over 200,000 New York City students receiving special education services and many families have to go through an extensive process to receive those services. Since it is extremely rare to have an impartial hearing open to the public, having S.J.D.'s impartial hearing open is a great benefit to those hundreds of thousands of New York City families as well as the millions around the country, others within the special education profession and policy makers, as well as the general public at-large. There is a tremendous amount to learn for all of these individuals to have sunlight on the process.

49.     In response to the request, IHO Lloyd and the DOE arranged for a room (Designated 507-508) on the fifth floor of the Impartial Hearing Office which was large enough to accommodate some of the parents of students at iBRAIN and some members of the public, but not the students themselves, all of whom are in wheelchairs and many who need special equipment (respirators, tubes, etc.) to tend to their intense physical and management needs. The room was not only unable

to accommodate the anticipated attendees, as requested, it was on the fifth floor of an old building with very limited emergency egress in case of a fire or other safety hazard for more than 30 wheelchair-dependent students.

50.     To remedy this, plaintiffs requested that the hearing be adjourned until the Impartial Hearing Office was able to secure a room (even if outside its 131 Livingston Street Brooklyn office) that would be large enough to accommodate all the persons who planned to attend.

51.     IHO Lloyd denied the request for an adjournment, and denied, at least provisionally, plaintiffs' application for an order permitting audio and video media to attend the proceeding, subject to renewal at the hearing.

52.     New York is one of the states that has a two-tiered due process proceeding, in that hearings are held by Impartial Hearing Officers (such as IHO Lloyd) and that appeals are taken to the State Review Officer (SRO), and that decisions from the SRO can be appealed to a court of competent jurisdiction, such as a New York federal district court.

53.     In response to the adverse decisions on recusal, pendency and audio and video media in the hearing room, plaintiffs contacted the New York State Education Department and inquired whether an emergency appeal to the State Review Officer was possible. On October 12, 2018, Plaintiffs received a response from Ms. Cathryn Tisenchek, Supervisor in the Due Process Unit of the New York State Education Department, Office of Special Education, stating "there is no provision in the Regulations for a temporary restraining order from the district or State Education Department; the party would have to go to court for such an order."

54.     On October 12, 2018, plaintiff Patrick Donohue filed a NYC Administrative Law Judge Complaint against IHO Lloyd to the City of New York Office of Administrative Trials and Hearings ("OATH") and the Administrative Justice Coordinator ("AJC").

55.    On October 15, 2018, plaintiff Patrick Donohue received a response from Assistant General Counsel Frank Ng of OATH, stating OATH and the AJC "do not have jurisdiction over the conduct of the Department of Education (DOE) hearing officers."

56.    Plaintiffs then brought an action in the United States District Court for the Southern District of New York, seeking an order enjoining IHO Lloyd from proceeding with the hearing, on the grounds that IHO Lloyd should have recused himself by reason of a conflict of interest, that he refused to arrange for a sufficiently large room to accommodate all interested persons, and refused to allow audio and video media to attend S.J.D.'s hearing; that action is currently pending (see case number 1:18-cv-09364-DAB).

57.    By reason of the above, the DOE, IHO Lloyd, and the New York State Education Department were all aware of plaintiffs' positions regarding recusal, pendency and providing a room large enough to accommodate all those who wished to attend, including but not limited to students in wheelchairs and audio and video media.

58.    The first day of hearing was set for October 16, 2018.

59.    Plaintiff Patrick Donohue, who is an attorney, admitted to practice in New York, appeared pro se as a parent, and additionally was represented by several attorneys from the Brain Injury Rights Group.

60.    Plaintiffs' counsel protested on the record that Room 507-508 was not large enough to accommodate the students from iBRAIN and that, as a result, those students were unable to attend the hearing.

61.    IHO Lloyd displayed his bias against children with disabilities by falsely claiming that Room 507-508 was large enough to accommodate all the iBRAIN students when he knew or

should have known (by taking simple measurements) that the room was not large enough and the location was not safe for that many students in wheelchairs.

62. Plaintiffs' counsel then renewed his motion for recusal as well as his motion for an order allowing audio and video media to attend the hearing.

63.  IHO Lloyd denied the requests.

64. All IHO Lloyd needed to do in denying the request for audio and video media in the hearing room was either to adhere to his prior ruling on the subject (without additional comments).

65. Statements such as those described in the preceding paragraph would be pertinent to his decision on the application to allow audio and video media in the hearing room.

66. However, IHO Lloyd went way beyond statements that were pertinent in that he gratuitously said it would be "disgusting" and "embarrassing" to allow video filming or photographing of students such as S.J.D. who had severe disabilities.

67. In making the above statement, IHO Lloyd gave the impression that children with severe disabilities should be hidden away from view instead of allowing them to be photographed and filmed. In other words, IHO Lloyd and the DOE sought to suppress from members of the public the truth about these children and the challenges faced by their parents.

68. In addition to the above, IHO Lloyd said that, in his view, it would constitute "child abuse" to show a child such as S.J.D. filmed or photographed.

69. In making the statement referred to in paragraph 68, IHO Lloyd either expressly or by implication accused plaintiff Patrick Donohue of "child abuse."

70. Plaintiff Patrick Donohue immediately demanded IHO Lloyd to issue a public apology for accusing him of child abuse and requested him to immediately recuse himself.

71.     In so doing, plaintiff Patrick Donohue was giving IHO Lloyd an opportunity, had he chosen to take it, to walk back from his intemperate remarks and to state, for example, that although he was not inclined to allow audio and video media in the hearing room, he did not mean to imply that Patrick Donohue was a child abuser.

72.     At that point, however, IHO Lloyd refused to apologize or to retract any of his remarks.

73.     Afterward, IHO Lloyd threatened to appoint a guardian ad litem and remove plaintiff Patrick Donohue from his position representing his daughter S.J.D.

74.     Further confirmation of IHO Lloyd's remarks, IHO Lloyd's refusal to retract his remarks, and the severe emotional distress suffered by plaintiff Patrick Donohue upon hearing the remarks, is contained in a New York Post article dated October 17, 2018 (see at link: https://nypost.com/2018/10/16/school-hearing-for-disabled-girl-turns-into-a-screaming-match/).

75.     Plaintiffs are paraphrasing the remarks of IHO Lloyd but will provide the entire quotes once the official transcript is available. The words "disgusting," "embarrassing," and "child abuse" were definitely part of the remarks made by IHO Lloyd.

76.     In opposing the presence of audio at the proceeding, the DOE aided and abetted IHO Lloyd in the conduct described above and below.

77.     The DOE attorneys were silent during IHO Lloyd's comments and the discussion.

78.     To the extent that misconduct of an IHO would constitute a violation of federal law, or a state or local law, the State of New York and the New York State Board of Regents ("Board of Regents") are vicariously liable for such misconduct.

*FEDERAL CAUSES OF ACTION*

<u>FIRST CAUSE OF ACTION: DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT</u>

79.     Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 78 as if more fully set forth herein.

80.     Plaintiff S.J.D. is a person with a disability within the meaning of 42 U.S. Code Sec. 12012, in that she has physical and mental impairments that substantially impair her ability to conduct major life activities such as walking and caring for herself.

81.     Under Title II of the Americans with Disabilities Act (42 U.S. Code Sec. 12131 et seq.), school districts must provide reasonable accommodations so that students can access all educational facilities; one of those facilities is the hearing room provided by the DOE. IHO Lloyd, the DOE and the Board of Regents all had an obligation to insure compliance with Title II of the Americans with Disabilities Act.

82.     In the instant case, plaintiffs' right to a due process hearing necessarily includes the right to have a hearing room in which all members of the public can attend, and in which audio and video media are allowed in to film the proceedings.

83.     In deciding to exclude audio and video media from the hearing and expressing the view that it would be "disgusting" and "embarrassing" to photograph and film severely disabled children, IHO Lloyd was denying plaintiffs their right to a public hearing.

84.     That action constitutes discrimination under Title II of the Americans with Disabilities Act.

85.      By reason of the above, plaintiffs are entitled to a mandatory injunction directing IHO Lloyd to allow audio and video media at S.J.D.'s hearing.

SECOND CAUSE OF ACTION: DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILIATION ACT

86.     Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 85 as if more fully set forth herein.

87.     Because the City of New York and New York State Board of Regents are receiving federal funds for education, they are required to comply with Section 504 of the Rehabilitation Act (29 U.S.C. Sec. 794). Moreover, the DOE, which made no attempt to assist plaintiffs in locating a suitable hearing room, is also in violation of Section 504.

88.     Under Section 504, school districts cannot deny students with disabilities (or parents who are advocating for such students) access to educational facilities; one of those facilities is the hearing room provided by the DOE.

89.      Among those educational benefits is the right to have hearing rooms sufficient to accommodate interested members of the public and to have audio and video media to record special education hearings that are open to the public.

90.     The order of IHO Lloyd which denied plaintiffs the right to have a sufficiently large room to accommodate interested members of the public and to permit audio and video media to film the proceeding, constitutes discrimination in violation of Section 504.

91.     Since IHO Lloyd's actions were committed within the scope of his duties as an IHO engaged by the New York State Education Department, the State of New York and the Board of Regents are vicariously liable for the actions of IHO Lloyd.

92.     By reason of its refusal to provide a sufficiently large hearing room and by opposing plaintiffs' request for permission to allow audio and video media attend the proceedings, the City of New York engaged in discrimination against plaintiffs within the meaning of Section 504.

93.     By reason of the above, plaintiffs are entitled to a mandatory injunction directing IHO Lloyd to allow audio and video media at S.J.D.'s hearing, and an award of damages against IHO Lloyd, the City of New York, the State of New York and the New York State Board of Regents.

THIRD CAUSE OF ACTION: RETALIATION IN VIOLATION OF SECTION 504 OF THE REHABILIATION ACT

94.     Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 93 as if more fully set forth herein.

95.     Section 504 prohibits an IHO from retaliating against a parent by reason of his or her advocacy on behalf of a child with a disability.

96.      The actions of IHO Lloyd in denying plaintiffs the right to have audio and video media attend the hearing, in refusing to provide a room that would safely accommodate all persons desiring to attend the hearing, in falsely accusing Patrick Donohue of child abuse, and in threatening to appoint a guardian ad litem constitute retaliation in violation of Section 504.

97.     By reason of the above, plaintiff is entitled to damages as against IHO Lloyd, the State of New York, and the New York State Board of Regents.

***SUPPLEMENTAL STATE CAUSES OF ACTION***

FOURTH CAUSE OF ACTION: DISCRIMINATION IN VIOLATION OF NEW YORK EXECUTIVE LAW

98.     Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 97 as if more fully set forth herein.

99.     Because the proceedings described above occurred within the State of New York, they are subject the New York Executive Law.

100.    S.J.D. is a person with a disability, within the meaning of the Section 292(21) of the Executive Law, which includes physical, mental or medical impairments that result from an

anatomical, physiological, neurological or genetic condition that prevent a person from exercising normal bodily functions.

101.    The New York Executive Law Section 296 prohibits discrimination against persons with disabilities who desire to use public facilities.

102.    The decision of IHO Lloyd denying plaintiffs the right to have audio and video media attend the proceedings constitutes discrimination in violation of the Executive Law.

103.    IHO Lloyd, the City of New York, the State of New York, and the New York State Board of Regents are all liable in damages by reason of the Executive Law.

104.    In addition, plaintiffs are entitled to injunctive relief directing IHO Lloyd to allow audio and video media inside the hearing room.

FIFTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF NEW YORK EXECUTIVE LAW

105.    Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 104 as if more fully set forth herein.

106.    The Executive Law prohibits hearing officers and the DOE from retaliating against parents by reason of their advocacy for their children who have disabilities.

107.    The actions of IHO Lloyd in denying plaintiffs the right to have audio and video media view the proceedings, in refusing to provide a room that would safely accommodate all persons desiring to attend the hearing, in falsely accusing plaintiff Patrick Donohue of child abuse, and in threatening to appoint a guardian ad litem constitute retaliation in violation of the New York Executive Law.

108.    IHO Lloyd, the State of New York, and the New York State Board of Regents are all liable in damages by reason of the above-mentioned retaliation.

SIXTH CAUSE OF ACTION: DISCRIMINATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

109.    Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 108 as if more fully set forth herein.

110.     Because all the acts alleged in this complaint occurred within the City of New York, the defendants are subject to Title 8 of the New York City Administrative Code, which is otherwise known as the New York City Human Rights Law.

111.     S.J.D. is a person with a disability within the meaning of Administrative Code Sec. 8-102(16).

112.    Administrative Code Sec. 8-107 prohibits discrimination against people with disabilities in the use of public accommodations or facilities of schools.

113.    Among the rights afforded by Section 8-107 are the right to have a hearing room large enough to accommodate all interested members of the public, and to have a public hearing at which audio and video media are permitted.

114.    The decision of IHO Lloyd denying plaintiff the right to have a hearing room sufficiently large to accommodate interested members of the public and to have audio and video the hearing constitutes discrimination on the basis of disability, in violation of Title 8 of the Administrative Code, and more specifically Administrative Code Sec. 8-107.

115.    By reason of the above, IHO Lloyd, the City of New York, the State of New York, and the New York State Board of Regents are all liable in damages to plaintiffs under the Administrative Code.

116.    In addition, plaintiffs are entitled to injunctive relief directing IHO Lloyd to allow audio and video media inside the hearing room.

SEVENTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

117.    Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 116 as if more fully set forth herein.

118.    The actions of IHO Lloyd in denying plaintiffs the right to have audio and video media attend the proceedings, in refusing to provide a room that would safely accommodate all persons desiring to attend the hearing, in falsely accusing plaintiff Patrick Donohue of child abuse, and in threatening to appoint a guardian ad litem constitute retaliation in violation of the Administrative Code.

119.    By reason of the above, defendants the State of New York, the New York State Board of Regents, and IHO Lloyd are liable to plaintiff in damages.

EIGHTH CAUSE OF ACTION: DEFAMATION

120.    Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 119 as if more fully set forth herein.

121.    The above described statement by IHO Lloyd which falsely accused plaintiff of "child abuse" constitutes defamation under New York law.

122.    The statement is defamatory in that it holds plaintiff up to hatred, scorn, ridicule and contempt, and that it could be construed to accuse him of criminal acts of child abuse.

123.    The general rule, under New York law, is that hearing officers, as quasi-judicial officials, are allowed absolute privilege in connection with any statement made by them in the performance of their official duties.

124.    However, under New York law, the absolute privilege applies if and only if the statement is pertinent to the matter being decided.

125.   IHO Lloyd could have rendered his decision barring audio and video media from the hearing without making a gratuitous and irrelevant statement falsely accusing Patrick Donohue of child abuse.

126.   Accordingly, IHO Lloyd is not protected by absolute privilege.

127.   IHO Lloyd knew that a false accusation of child abuse would be especially damaging to plaintiff Patrick Donohue, whose entire career for more than ten years has been focused on advocating for the rights of children with disabilities, in that plaintiff is not only the founder of a foundation which aids brain-injured children but is also the founder and senior member of the Brain Injury Rights Group, a not-for-profit law firm dedicated to protecting the legal rights of brain-injured children and their families.

128.   IHO Lloyd showed malice in that he specifically passed up an opportunity to retract any express or implied statement accusing Patrick Donohue of child abuse.

129.   By reason of the above, IHO Lloyd is liable for damages for defamation.

130.   Since IHO Lloyd's actions were committed within the scope of his duties as an IHO engaged by the New York State Education Department, the State of New York and the Board of Regents are vicariously liable in damages for the defamatory statements made by IHO Lloyd.

NINTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

131.   Plaintiffs re-allege and repeat each and every allegation contained in paragraphs 1 through 130 as if more fully set forth herein.

132.   IHO Lloyd, knew that plaintiff Patrick Donohue would be severely distressed by any false accusation that he (plaintiff) was a child abuser, in light of the fact that IHO knew that plaintiff's daughter tragically was a victim of a child abuser from outside the family.

133.    IHO Lloyd's statement to Patrick Donohue regarding child abuse was so outrageous as to constitute all bounds tolerated in a civilized society.

134.    Additionally, during the course of the hearing, IHO Lloyd threatened to bar Patrick Donohue from representing his daughter S.J.D. in this proceeding and threatened to appoint a guardian ad litem for S.J.D..

135.    That statement was intended to induce emotional distress, as IHO Lloyd had no probable cause to seek removal of Patrick Donohue as guardian—Patrick Donohue has devoted his life since S.J.D.'s birth and has sought nothing but the best for S.J.D.—nor did he even have the ability to do so on his own accord, as a hearing officer must apply to a court of competent jurisdiction to seek such relief.

136.    IHO Lloyd's statements therefore constitute intentional infliction of emotional distress.

137.    By reason of the above, defendants the State of New York, the New York State Board of Regents, and IHO Lloyd are liable to plaintiff in damages.

    WHEREFORE, plaintiffs demand in the form of damages in the amount of $10,000,000 (ten-million dollars) on the second, third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action, and injunctive relief as described above under the first, second, fourth, and sixth causes of action.

Dated: October 22, 2018

Brain Injury Rights Group
Attorneys for Plaintiffs
Ralph Gerstein, Counsel
50 W. 97th St., Suite 1E
New York, NY 10025
(646) 530-5035